UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FELIX VINCENT SITTHIVONG,

                                    Petitioner,

        v.

MIKE OBENLAND,

                                    Respondent.

Case No. C14-1876-RSL-MLP

REPORT AND RECOMMENDATION

## I.      INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Felix Sitthivong is a state prisoner who is currently confined at the Monroe Correctional Complex in Monroe, Washington. He seeks relief under 28 U.S.C. § 2254 from a 2011 King County Superior Court judgment and sentence. (Dkt. # 8.) Respondent has filed an answer responding to Petitioner's federal habeas claims and has submitted relevant portions of the state court record. (Dkt. ## 40, 41.) This Court, having carefully reviewed Petitioner's petition for writ of habeas corpus, all briefing of the parties, the trial transcript, and the balance of the record, concludes that Petitioner's federal habeas petition should be denied and this action should be dismissed with prejudice.

REPORT AND RECOMMENDATION
PAGE - 1

## II.    FACTUAL BACKGROUND

The Washington Court of Appeals, in the first of Petitioner's two personal restraint

proceedings, summarized the facts underlying Petitioner's convictions as follows:

*Substantive Facts*

On a Saturday night in 2010, Sitthivong was in the Belltown neighborhood with a group of friends. They visited several bars during the evening. At one of these bars, Sitthivong testified that he was confronted by a group of men that included Steve Sok and Landon Nguyen, and that during the confrontation someone threatened to kill him.

Around 1:30 a.m., Sitthivong and his friends drove to V-Bar, another bar in the Belltown neighborhood. Sok, Landon Nguyen, Phillip Nguyen, Yousouf Ahmach, and several of their friends were already at V-Bar when Sitthivong and his friends arrived. Sitthivong testified that when they arrived at V-Bar he saw the same group of men who had confronted him at the other bar. After they parked their car, Sitthivong borrowed a gun from one of his friends, tucked it into his pants, got out of the car, and walked toward the bar.

At this point, testimony from the State's witnesses differed from Sitthivong's testimony.[1] Sitthivong testified that Sok, Landon Nguyen, and a third person walked up to him and confronted him. Sitthivong testified that after Sok's group walked away, both Sok and Nguyen turned around and pulled out guns. Sitthivong stated he then grabbed the gun he was carrying and started shooting. Sitthivong testified he focused on shooting towards the gun that was pointed at him, while the second man ducked into the doorway. Sitthivong stated he was not aiming, that he was moving as he fired, and that he just pointed and shot as he ran back to the car.

Phillip Nguyen testified that about 30 minutes after arriving at V-Bar, he and Sok went outside to smoke a cigarette. While they were standing outside he heard a series of gunshots and ducked into the entryway of the bar. He turned and saw Sok on the ground where he had been smoking. Nguyen testified he did not see anyone holding a gun, though he saw a muzzle flash.

Landon Nguyen and Ahmach testified that they also left V-Bar to smoke a cigarette. They stated that as they walked away from the bar, Sitthivong approached them, and after a confrontation, grabbed a gun from the waistline of

---

[1] [Court of Appeals footnote 1] Sitthivong admits that the majority of the witness testimony, including the testimony of Sitthivong's companions, was consistent with the State's case. Sitthivong's testimony is mostly uncorroborated.

REPORT AND RECOMMENDATION
PAGE - 2

his pants then started shooting. When they saw Sitthivong's gun, they both turned around and ran the opposite direction, back towards the entrance to V-Bar.

Three of Sitthivong's companions, Kenrique Thomas, Ron Battles, and Nam Nguyen, also testified that Sitthivong had a short verbal confrontation with Landon Nguyen and Ahmach. All testified that they had never seen either Landon Nguyen or Ahmach before that confrontation. Sitthivong asked if the [sic] Landon Nguyen or Ahmach knew "Sonny," and when they said yes, he drew his gun. Landon Nguyen and Ahmach turned and ran the opposite direction, towards V-Bar. When the gun did not fire, Sitthivong pulled back the slide to load a bullet, and then rapidly fired eight shots down the sidewalk at Landon and Ahmach as they ran. As Sitthivong started shooting, his friends also started running back to the car. Sitthivong eventually ran back to the car. He was the last one to get in the car.

A cell phone video taken from across the street revealed eight rapidly fired gunshots and two men running down the street, seemingly away from the shots. A crime scene investigation determined that the shots all came from the direction where Sitthivong stood, were shot toward the entrance to V-bar, and all of the casings were fired from the same gun.

Sok died of a gunshot wound to the head. Phillip Thomas, a bystander who was not associated with any of the other parties, was shot in the abdomen, but survived.

*Procedural Facts*

By amended information, the State charged Sitthivong with first degree premeditated murder (count 1) and, in the alternative, first degree murder by extreme indifference for Sok's death (count 5). The States also charged Sitthivong with first degree assault of Thomas (count 2), and two counts of first degree attempted murder of Ahmach and Landon Nguyen (counts 3 and 4). All charges included firearms enhancements.

Because Sitthivong's primary defense at trial was justifiable homicide, the trial court provided a justification instruction for all five counts. Sitthivong also requested lesser included offense instructions for second degree murder under count 1, and first and second degree manslaughter instructions for all counts. The trial court concluded the evidence supported the lesser instruction for second degree murder and first degree manslaughter for counts 1, 3, and 4. The trial court denied Sitthivong's request to instruct the jury on the lesser included offense of

REPORT AND RECOMMENDATION
PAGE - 3

first degree manslaughter for count 5 (first degree murder with extreme indifference).[2]

After a lengthy trial, a jury convicted Sitthivong of killing Sok under count 5 (first degree murder by extreme indifference) and the lesser included offense of second degree murder under count 1.) The jury also convicted Sitthivong of first degree assault (count 2) and two counts of attempted second degree murder (counts 3 and 4). Each conviction included a firearm enhancement. The trial court sentenced Sitthivong to standard range sentences for all counts and vacated the second degree murder conviction under count 1 on double jeopardy grounds.[3]

(Dkt. # 41, Ex. 42 at 2-5.)

## III.    PROCEDURAL BACKGROUND

Petitioner appealed his convictions to the Washington Court of Appeals, and the Court of Appeals issued an unpublished opinion affirming his convictions on June 17, 2013. (*Id.*, Ex. 24.) Petitioner thereafter sought discretionary review in the Washington Supreme Court. (*Id.*, Ex. 25.) He identified three issues in his *pro se* petition for review: (1) the trial court erred by refusing to instruct the jury on first-degree manslaughter as a lesser-included offense of first-degree murder by extreme indifference; (2) defense counsel rendered ineffective assistance by failing to request a proper self-defense instruction for the charge of first-degree assault; and (3) the trial court violated his confrontation rights when it refused to admit a 911 tape recording. (*See id.*) The Supreme Court denied Petitioner's petition for review without comment on December 11, 2013, and the Court of Appeals issued its mandate terminating direct review on January 15, 2014. (*Id.*, Exs. 26-27.)

---

[2] [Court of Appeals footnote 2] Sitthivong asked the court to reconsider the next day, providing supplemental briefing for his objection, but the trial court adhered to its ruling.

[3] [Court of Appeals footnote 3] The jury found Sitthivong guilty of second degree intentional murder of Steve Sok and first degree murder by extreme in difference [sic] of Steve Sok. On double jeopardy grounds the court cannot impose a sentence for the same murder on two separate counts; the lesser count was vacated.

REPORT AND RECOMMENDATION
PAGE - 4

On July 3, 2014, Petitioner filed a *pro se* personal restraint petition with the Washington Supreme Court. (*Id*., Ex. 28.) The clerk of the Supreme Court transferred the petition to the Court of Appeals for consideration and, on September 24, 2014, the Court of Appeals dismissed the petition upon concluding that the claims asserted therein had been rejected on direct appeal and Petitioner had not demonstrated the ends of justice required relitigation of the claims. (*Id*., Exs. 29-30.)

Petitioner sought discretionary review of the Court of Appeals' decision in the Washington Supreme Court. (*Id*., Ex. 33.) Petitioner identified the following two issues in his motion for discretionary review: (1) the trial court's refusal to grant his request for a lesser-included offense instruction with respect to the charge of first-degree murder by extreme indifference violated his right to a fair trial; and (2) the trial court's refusal to admit the 911 tape recording for purposes of impeaching a state's witness violated his right to a fair trial. (*Id*.) The Supreme Court granted discretionary review and remanded the petition to the Court of Appeals for reconsideration in light of the then-recent opinion in *State v. Henderson*, 182 Wn.2d 734 (2015). (*Id*., Ex. 34.)

After receiving additional briefing from the parties, including a response to the petition from the State and a reply brief from Petitioner, the Court of Appeals appointed counsel for Petitioner and referred the petition to a panel of judges. (*Id*., Exs. 35-37.) Petitioner's counsel subsequently supplemented the petition to add an ineffective assistance of counsel claim. (*Id*., Ex. 39.) Specifically, Petitioner asserted that his trial and appellate counsel rendered ineffective assistance when they failed to cite the case of *State v. Gamble*, 154 Wn.2d 457 (2005), in support of his claim of instructional error. (*Id*.) On January 22, 2018, the Washington Court of Appeals issued an unpublished opinion denying Petitioner's personal restraint petition. (*Id*., Ex. 42.)

REPORT AND RECOMMENDATION
PAGE - 5

Petitioner's post-conviction counsel filed a motion for discretionary review in the Washington Supreme Court, arguing that the Court of Appeals' holdings with respect to Petitioner's claims of instructional error and ineffective assistance of counsel were erroneous. (*Id*., Ex. 43.) The Supreme Court denied review without comment on May 2, 2018, and the Court of Appeals issued a mandate terminating review on May 18, 2018. (*Id*., Exs. 46-47.)

On December 14, 2014, while Petitioner's first personal restraint petition was pending in the state courts, petitioner filed a second personal restraint petition with the Washington Court of Appeals. (*Id*., Ex. 48.) Petitioner identified five grounds for relief in his petition: (1) the trial court erred in admitting a photograph of Petitioner's arrest in California (State's Exhibit 59-D); (2) defense counsel rendered ineffective assistance by failing to offer into evidence a potentially exculpatory statement by an unavailable witness, Debra Green; (3) the prosecutor committed misconduct by falsely representing that a plea deal with Nam Nguyen had been withdrawn prior to Nam testifying for the State; (4) the evidence was insufficient to support Petitioner's convictions on the charges of first and second-degree murder, and first-degree attempted murder; and (5) appellate counsel was ineffective on direct appeal for failing to argue that trial counsel was ineffective for not requesting a proper self-defense instruction in relation to the assault charge. (*Id*.)

The Court of Appeals stayed Petitioner's second personal restraint petition pending consideration of his first petition. (*See id*., Ex. 49.) On July 11, 2018, the Court of Appeals lifted the stay and transferred the petition to the Washington Supreme Court as a successive petition. (*Id*.) On October 30, 2019, the Supreme Court commissioner issued a ruling dismissing Petitioners' personal restraint petition upon concluding that Petitioner had presented no arguable basis for relief thus rendering his petition frivolous. (*Id*., Ex. 53.)

REPORT AND RECOMMENDATION
PAGE - 6

Petitioner filed the instant habeas action in December 2014. (*See* Dkt. # 3.) Petitioner submitted with his petition a motion to stay the action pending completion of his state court post-conviction proceedings. (Dkt. # 4.) Petitioner thereafter filed an amended petition, at the Court's direction, because his original petition was submitted on an improper form. (Dkt. ## 5, 8.) On April 7, 2015, the Court granted Petitioner's motion to stay. (Dkt. # 14.) The Court lifted the stay on April 28, 2020 and directed Respondent to file an answer to the amended petition. (Dkt. # 37.) Respondent filed his answer on July 13, 2020 (dkt. # 40), and this matter is now ripe for review.

## IV.    GROUNDS FOR RELIEF

Petitioner identifies seven grounds for relief in his amended petition which may be summarized as follows:

1.    The trial court erred in refusing to give an instruction on first-degree manslaughter as a lesser-included offense of first-degree murder by extreme indifference.

2.    Trial counsel rendered ineffective assistance by failing to request a self-defense instruction to the first-degree assault charge.

3.    The trial court erred in refusing to admit a 911 tape recording for the defense to impeach a State's witness for bias.

4.    The trial court erred by admitting State's Exhibit 59-D over defense objection.

5.    Trial counsel rendered ineffective assistance by failing to seek admission of an exculpatory witness statement under ER 804(a)(5).

6.    The prosecutor committed misconduct by falsely representing that a pretrial agreement with a State's witness had been withdrawn prior to the witness's testimony at trial.

7.    There was insufficient evidence presented at trial to support Petitioner's convictions.

(Dkt. # 8 at 5-15; *see also* Dkt. # 3-1 at 2-17 (Petitioner's supporting memorandum).)

REPORT AND RECOMMENDATION
PAGE - 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## V.    DISCUSSION

Respondent concedes that Petitioner fairly presented his claims to the Washington Supreme Court and that he has therefore exhausted his state remedies in accordance with 28 U.S.C. § 2254(b). (Dkt. # 40 at 8.) Respondent argues, however, that Petitioner is not entitled to relief with respect to any of the claims asserted in his federal habeas petition. (*See id*. at 12-48.)

### A.    Standard of Review

Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The Supreme Court has also explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

REPORT AND RECOMMENDATION
PAGE - 8

of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

In considering a habeas petition, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## B.    Analysis

### 1.    Denial of Lesser-Included Offense Instruction (Ground One)

Petitioner asserts in his first ground for relief that the trial court erred in refusing to instruct the jury on first-degree manslaughter as a lesser-included offense of first-degree murder by extreme indifference. (Dkt. # 8 at 5; *see also* Dkt. # 3-1 at 5-8.) Petitioner argues that he was entitled to such an instruction under state law. (*See* Dkt. # 3-1 at 5-8.)

Claims of error concerning state jury instructions are generally matters of state law that are not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). An alleged error in a state court's determination of whether state law allowed for a particular

1    instruction cannot form a basis for federal habeas relief. *Menendez v. Terhune*, 422 F.3d 1012,

2    1029 (9th Cir. 2005) (citing *Estelle*, 502 U.S. at 67-68). Likewise, the failure to give an

3    instruction which might be proper as a matter of state law does not, by itself, merit federal

4    habeas relief. *Id*.

5        Federal habeas relief is available only when the petitioner demonstrates that the

6    instructional error "so infected the entire trial that the resulting conviction violates due process."

7    *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Where the

8    challenge is to the failure to give an instruction, the petitioner's burden is "especially heavy"

9    because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a

10    misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

11        Petitioner first presented his challenge to the trial court's denial of his request for a lesser

12    included offense instruction to the Washington Court of Appeals on direct appeal of his

13    conviction. The Court of Appeals rejected the claim, concluding that Petitioner was not entitled

14    to such an instruction because the evidence presented at trial did not raise an inference that he

15    committed only first-degree manslaughter rather than first-degree murder by extreme

16    indifference. (Dkt. # 41, Ex. 24 at 4-10.) Petitioner raised the issue again in his first personal

17    restraint petition and, though the Court of Appeals initially rejected the claim because it had

18    previously been decided on direct appeal, the court revisited the issue on remand from the

19    Washington Supreme Court. (*Id*., Exs. 28, 30, 42.)

20        On remand the Court of Appeals concluded that, in light of the Washington Supreme

21    Court's decision in *Henderson*, *supra*, Petitioner was entitled to an instruction on manslaughter

22    as a lesser-included offense of first-degree murder by extreme indifference, but the denial of

23

REPORT AND RECOMMENDATION
PAGE - 10

such an instruction was not prejudicial. The Court of Appeals explained its conclusion with

respect to the issue of prejudice as follows:

> This court has previously held that "[a]n error in failing to instruct on a
> lesser included offense does not require reversal if the factual question posed by
> the omitted instruction was necessarily resolved adversely to the defendant under
> other, properly given instructions." State v. Hansen, 46 Wn. App. 292, 297, 730
> P.2d 706 (1986). Here counts 1 and 5 were both for the killing of Steve Sok.
> Count 1, first degree premeditated murder, included the lesser degree instructions
> for second degree murder and first degree manslaughter, with an additional
> justification instruction. The jury was instructed that "if, after full and careful
> deliberation on this charge, you are not satisfied beyond a reasonable doubt that
> the defendant is guilty, then you will consider whether the defendant is guilty of
> the lesser crime of Manslaughter in the First Degree." The jury found Sitthivong
> guilty of second degree murder—defined as acting "with intent to cause the death
> of another person but without premeditation." The jury's verdict necessarily
> rejected both the manslaughter instruction and the justification instruction. We
> presume juries follow the instructions provided. State v. Ervin, 158 Wn.2d 746,
> 756, 147 P.3d 567 (2006).
>
> The policy reasons for requiring lesser included instructions are also
> absent here. As the Henderson court explained, lesser included instructions help
> "protect the integrity of our criminal justice system by ensuring that juries
> considering defendants who are 'plainly guilty of some offense' do not set aside
> reasonable doubts in order to convict them and avoid letting them go free."
> Henderson, 182 Wn.2d at 742 (quoting Keeble v. U.S., 412 U.S. 205, 212-13, 93
> S. Ct. 1993, 36 L. Ed. 2d 844 (1973)). In this case, although count 5 only gave
> one instruction, the jury had already considered the separate charge in count 1 for
> the killing of Sok, which included instructions for first degree murder, second
> degree murder, first degree manslaughter, and justification. Because the jury had
> already found Sitthivong guilty for the killing of Sok, (as well as four other
> charges), there was no risk that a finding of not guilty on the final count would
> result in acquittal.

(Dkt. # 41, Ex. 42 at 14-16 ((footnote omitted) (emphasis in original).)

Petitioner fails to demonstrate that the Court of Appeals' adjudication of his jury

instruction claim was contrary to, or constituted an unreasonable application of, clearly

established federal law. As noted above, the mere fact that the trial court denied Petitioner an

instruction which the Court of Appeals subsequently determined he was entitled to is not

REPORT AND RECOMMENDATION

PAGE - 11

1 sufficient to merit federal habeas relief. A federal habeas Petitioner must demonstrate that he was

2 actually prejudiced by the failure to give the instruction. Here, the Court of Appeals reasonably

3 concluded that Petitioner suffered no prejudice because the jury had previously rejected the

4 manslaughter instruction in relation to a separate first-degree murder charge. Petitioner does not

5 challenge the court's conclusion with respect to the issue of prejudice nor does he identify any

6 United States Supreme Court precedent which mandates a different result.[4] Accordingly,

7 Petitioner's federal habeas petition should be denied with respect to his first ground for relief.

8                 2.     *Ineffective Assistance of Counsel (Grounds Two and Five)*

9        Petitioner asserts in his second ground for relief that his trial counsel rendered ineffective

10 assistance when he failed to request a self-defense instruction specific to the first-degree assault

11 charge. (Dkt. # 8 at 7; *see also* Dkt. # 3-1 at 8-10.) Petitioner asserts in his fifth ground for relief

12 that his trial counsel rendered ineffective assistance when he failed to seek admission of a

13 potentially exculpatory statement of an unavailable witness, Debra Green. (Dkt. # 8 at 12; *see*

14 *also* Dkt. # 3-1 at 13-14.)

15        The Sixth Amendment guarantees a criminal defendant the right to effective assistance of

16 counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). "The essence of an ineffective-

17 assistance claim is that counsel's unprofessional errors so upset the adversarial balance between

18 defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."

19 *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Claims of ineffective assistance of counsel

20 are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must

21

22 _____

[4] Indeed, in *Beck v. Alabama*, 447 U.S. 625 (1980), the United States Supreme Court made clear that the failure to instruct on a lesser included offense can constitute constitutional error in a capital case, *id*. at 638, but expressly reserved judgment as to "whether the Due Process Clause would require the giving of

23 such instructions in a non-capital case," *id*. at 637-38, n.14.

REPORT AND RECOMMENDATION
PAGE - 12

1    prove (1) that counsel's performance was deficient and, (2) that the deficient performance

2    prejudiced the defense. *Strickland*, 466 U.S. at 687.

3        With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's

4    performance fell below an objective standard of reasonableness. *Id*. at 688. Judicial scrutiny of

5    counsel's performance must be highly deferential. *Id*. at 689. "A fair assessment of attorney

6    performance requires that every effort be made to eliminate the distorting effects of hindsight, to

7    reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

8    counsel's perspective at the time." *Id*.

9        The second prong of the *Strickland* test requires a showing of actual prejudice related to

10   counsel's performance. In order to establish prejudice, a petitioner "must show that there is a

11   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

12   would have been different. A reasonable probability is a probability sufficient to undermine

13   confidence in the outcome." *Id*. at 694. The reviewing court need not address both components

14   of the inquiry if an insufficient showing is made on one component. *Id*. at 697.

15       While the Supreme Court established in *Strickland* the legal principles that govern claims

16   of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate

17   whether defense counsel's performance fell below the *Strickland* standard. *Harrington*, 562 U.S.

18   at 101. Rather, when considering an ineffective assistance of counsel claim on federal habeas

19   review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard

20   was unreasonable." *Id*. As the Supreme Court explained in *Harrington*, "[a] state court must be

21   granted a deference and latitude that are not in operation when the case involves review under

22   the *Strickland* standard itself." *Id*.

23

REPORT AND RECOMMENDATION
PAGE - 13

1           i.      Failure to Request Self-Defense Instruction (Ground Two)

2    Petitioner asserts that his trial counsel rendered ineffective assistance when he requested

3    a self-defense instruction based on Washington Pattern Jury Instruction—Criminal (WPIC)

4    16.02, the justifiable homicide instruction, which was given as to charged counts one through

5    five. (*See* Dkt. # 3-1 at 9.) Petitioner faults counsel for not requesting a lawful use of force

6    instruction with respect to the assault charge (count two), arguing that such an instruction would

7    have had a lower threshold for establishing self-defense than did the justifiable homicide

8    instruction.[5] (*Id*. at 9-10.)

9    The Washington Court of Appeals, on direct appeal, concluded that counsel's decision

10    not to demand a self-defense instruction specific to the first-degree assault charge was not

11    objectively unreasonable. The Court of Appeals explained its conclusion as follows:

12          Sitthivong's theory of self defense was that he used lawful self defense in
        shooting Sok, Ahmach, and Nguyen. The evidence clearly indicated that the only

13          reason for Thomas's injuries was a result of the shots fired by Sitthivong's [sic] at
        Sok, Ahmach, and Nguyen. Sitthivong had no alternative theory of self defense

14          for the assault of Thomas. Nor was there evidence to support such a theory.
        Sitthivong could only argue that, if the use of force as to Sok, Ahmach, and

15          Nguyen was lawful, it was also lawful as to Thomas.

16          The jury was provided with the justifiable homicide self defense
        instruction, which mirrors WPIC 16.02. This instruction requires that the slayer

17          reasonably believe that the person slain intended to commit a felony or to inflict
        death or great personal injury. . . .

18

19          . . . .

20    _____

21    [5] Petitioner references WPIC 17.04 and 17.05 as the instructions he believes should have been given
        instead of WPIC 16.02. (Dkt. # 3-1 at 9.) Respondent suggests in his answer that Petitioner meant to cite
        to WPIC 17.02, observing that the two cited instructions are described as supplemental instructions to be

22    used, where appropriate, in conjunction with WPIC 17.02. (Dkt. # 40 at 21, n.11.) Respondent further
        observes that Petitioner, in his brief on direct appeal, premised his ineffective assistance of counsel claim
        on counsel's failure to request a WPIC 17.02 self-defense instruction and made no reference to either

23    WPIC 17.04 or WPIC 17.05. (*See id*.)

REPORT AND RECOMMENDATION
PAGE - 14

Under [the court's] justifiable homicide instruction, if the jury found Sitthivong was justified in using force in self defense against Sok, Nguyen, and Ahmach, then the force was lawful. In that case, Sitthivong's conduct towards Thomas also would have been lawful. This was Sitthivong's theory of defense. His attorney was able to argue it fully without a separate self defense instruction on the assault charges. Because the only intent that Sitthivong had was directed at Sok, Ahmach, and Nguyen, his self defense had to be related to this intent as well. Thus, Sitthivong's attorney's performance was not deficient.

. . . .

Here, the only belief that Sitthivong argued he had to explain his actions, was that Ahmach, Sok and Nguyen were intending to inflict death or great personal injury against him. There was no evidence that Thomas intended anything toward Sitthivong, nor did Sitthivong argue that this was the case. In response to the alleged actions of Ahmach, Sok, and Nguyen, Sitthivong shot at them, accidentally hitting Thomas. On these facts, under <u>Cowen</u>, only the justifiable homicide instruction was warranted. Counsel's performance was not deficient.

(Dkt. # 41, Ex. 24 at 11-13, citing *State v. Cowen*, 87 Wn. App. 45 (1997).)

Petitioner fails to demonstrate that the Court of Appeals' decision constituted an unreasonable application of the *Strickland* standard. As Respondent correctly notes in his answer to Petitioner's petition, the Court of Appeals' holding involved the application of state-law principles to the question of which instruction stated the appropriate standard for self-defense under the facts of Petitioner's case. (Dkt. # 40 at 24.) A state court's interpretation of state law is binding on a federal habeas court. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Because the state court concluded that the self-defense instruction requested by Petitioner's counsel was the only appropriate instruction under state law, Petitioner's ineffective assistance of counsel claim necessarily fails. Petitioner's federal habeas petition should therefore be denied with respect to his second ground for relief.

REPORT AND RECOMMENDATION
PAGE - 15

1                    ii.      Failure to Admit Exculpatory Statement (Ground Five)

2          Petitioner asserts that his trial counsel also rendered ineffective assistance when he failed

3   to seek admission of a potentially exculpatory witness statement pursuant to ER 804(a)(5). (Dkt.

4   # 3-1 at 13.) At issue is the witness statement of an individual named Debra Green who was in

5   the vicinity of the shooting on June 6, 2010, and was expected to testify at trial on behalf of the

6   defense. During a show-up identification procedure conducted by a Seattle police detective

7   shortly after the shooting, Ms. Green identified Landon Nguyen as the shooter. (*See* Dkt. # 41,

8   Ex. 11 at 154.) Landon Nguyen was identified in the charging document filed against Petitioner

9   as the intended victim in count 3. Ms. Green did not testify at trial, apparently because she could

10  not be located. (*Id.*, Ex. 12 at 3.) Defense counsel sought to admit Ms. Green's statement from

11  the show-up through another Seattle police detective who did not participate in the show-up

12  procedure, but who spoke with Ms. Green later that same morning. (*See id.*, Ex. 11 at 144-45,

13  154-55.) The State objected to admission of the statement on hearsay grounds, and the trial court

14  ruled that the defense could not use any statements Ms. Green made during the show-up. (*Id.*,

15  Ex. 11 at 150-51.)

16         Petitioner appears to believe that ER 804(a)(5) would have provided counsel a

17  mechanism for gaining admission of Ms. Green's statement and he faults counsel for failing to

18  utilize it. Petitioner asserts that Ms. Green's testimony was crucial because it corroborated his

19  story that he fired in self-defense after a gun was pointed at him, and he believes defense counsel

20  should have introduced her statement under the "missing witness rule." (Dkt. # 3-1 at 13.)

21         Petitioner raised this claim in his second personal restraint petition, and the Washington

22  Supreme Court rejected the claim. The Supreme Court commissioner explained his conclusion as

23  follows:

REPORT AND RECOMMENDATION
PAGE - 16

Mr. Sitthivong next contends that defense counsel was ineffective in not seeking the admission of the out-of-court statement of a witness who could not be located for trial. The witness, Debra Green, had given a statement to police identifying another person as a shooter. Mr. Sitthivong urges that this statement would have bolstered his claim of justifiable homicide. But for counsel to have been prejudicially ineffective, it must be likely that the trial court would have granted a motion to admit Ms. Green's out-of-court statement. *See State v. Torres*, 198 Wn. App. 864, 880, 397 P.3d 900, *review denied*, 189 Wn.2d 1022 (2017) (no prejudice from failing to move to suppress confession if no showing that trial court likely would have granted motion). Mr. Sitthivong does not identify any rule under which Ms. Green's statement would have been admissible. He cites ER 804(a)(5), but that rule only describes the circumstances under which a declarant may be deemed "unavailable." The proponent of admitting the hearsay statement of an unavailable declarant must still show that one of the exceptions to the hearsay rule for unavailable declarants applies. *See* ER 804(b) (former testimony, statement under belief of impeding [sic] death, statement against interest, statement of personal or family history, statement offered against party who intentionally procured declarant's unavailability by wrongdoing). Mr. Sitthivong does not show that any of these exceptions applies to Ms. Green's statement. He thus fails to demonstrate that defense counsel was ineffective in not moving to admit the statement.

(Dkt. # 41, Ex. 53 at 4-5.)

Petitioner fails to demonstrate that this decision of the Washington Supreme Court constituted an unreasonable application of the *Strickland* standard. Petitioner focuses his argument solely on the fact that Ms. Green was unavailable without offering any evidence or argument demonstrating that her out-of-court statement was otherwise admissible. Nothing in the record suggests that any of the exceptions to the hearsay rule, as set forth in ER 804(b), would have applied to Ms. Green's statement. Counsel's failure to make an argument that was likely to fail does not constitute ineffective assistance. Petitioner's federal habeas petition should therefore be denied with respect to his fifth ground for relief.

### 3. *Confrontation Clause (Ground Three)*

Petitioner asserts in his third ground for relief that the trial court erred in denying a defense request to admit a tape recording of Kevin Lessig's 911 call for purposes of impeaching

REPORT AND RECOMMENDATION
PAGE - 17

1    Mr. Lessig during his testimony in the defense case. (Dkt. # 8 at 8; *see also* Dkt. # 3-1 at 11-12.)

2    Petitioner presented this claim to the state courts in his statement of additional grounds for

3    review on direct appeal. (Dkt. # 41, Ex. 22 at 6-8.) The Washington Court of Appeals declined to

4    consider Petitioner's Confrontation Clause argument in relation to the exclusion of the 911

5    recording because Petitioner's counsel did not object to the exclusion of the evidence on Sixth

6    Amendment grounds during trial and therefore did not preserve the issue for appeal. (*Id.*, Ex. 24

7    at 14.)

8        Respondent suggests in his answer to Petitioner's petition that this ruling of the Court of

9    Appeals is entitled to deference on habeas review, but argues that even if it is not entitled to

10   deference the trial court's refusal to admit the 911 recording, assuming it was error, was clearly

11   harmless error. (Dkt. # 40 at 28.) This Court will address the substance of Petitioner's

12   Confrontation Clause claim rather than relying on the procedural issue suggested by Respondent.

13       The Confrontation Clause of the Sixth Amendment secures for the criminal defendant the

14   right to cross-examine a witness against him in order to test the believability of the witness.

15   *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). As the Court recognized in *Davis*, "the exposure

16   of a witness' motivation in testifying is a proper and important function of the constitutionally

17   protected right of cross-examination." *Id.* at 316-17. Nonetheless, the right to cross-examination

18   is not without limits. Trial courts have broad discretion to impose limits on cross-examination,

19   based on evidentiary concerns such as those embodied in the Federal Rules of Evidence,

20   including relevancy, harassment, prejudice, delay, duplicity, or confusion of the issues.

21   *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The Supreme Court has observed that "the

22   Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-

23

REPORT AND RECOMMENDATION
PAGE - 18

1  examination that is effective in whatever way, and to whatever extent, the defense might wish."

2  *Id.* (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original)).

3          The Supreme Court has also made clear that "the constitutionally improper denial of a

4  defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is

5  subject to . . . harmless-error analysis." *Id.* at 684. Relevant factors to consider in the harmless

6  error analysis include "the importance of the witness' testimony in the prosecution's case,

7  whether the testimony was cumulative, the presence or absence of evidence corroborating or

8  contradicting the testimony of the witness on material points, the extent of cross-examination

9  otherwise permitted, and . . . the overall strength of the prosecution's case." *Id.*

10         Mr. Lessig was the resident manager of an apartment building located across the street

11  from the V-Bar where the shooting at issue in this case occurred. (Dkt. # 41, Ex. 5 at 42-43.) In

12  the early morning hours of June 6, 2010, Mr. Lessig was awake and watching the V-Bar because

13  of prior problems at the venue, including a great deal of violence. (*Id.*, Ex. 5 at 43-45.) Mr.

14  Lessig intended to use his cell phone to take video documenting any problems he might observe

15  that night. (*Id.*, Ex. 5 at 45.) At approximately 2:45 a.m., Mr. Lessig made a cell phone video

16  recording of the shooting that occurred in front of the V-Bar. (*Id.*, Ex. 5 at 45-47.) After the shots

17  were fired, Mr. Lessig called 911 and he thereafter spoke with detectives. (*Id.*, Ex. 5 at 49-50.)

18  Among the things Mr. Lessig told the 911 operator was that the shooter had been standing over

19  the victim and had fired multiple rounds into him before running into the bar. (*Id.*)

20         Mr. Lessig was called to testify at Petitioner's trial by both the State and by the defense.

21  When Mr. Lessig was called during the State's case, he testified that on the night of the shooting

22  he never actually saw anyone with a gun in their hand, nor any muzzle flash, and that he had

23  made assumptions, based on circumstances, about the position of the shooter in relation to the

REPORT AND RECOMMENDATION

PAGE - 19

victim. (*See id*., Ex. 5 at 49-51, 74, 81.) Mr. Lessig admitted that he had made errors in his

account of events as relayed to the 911 operator and as described to police detectives on the night

of the shooting. (*See id*. at 70-81.)

Prior to being called in the defense case, defense counsel indicated to the court that the

defense was intending to offer the 911 recording of Mr. Lessig's call as substantive evidence

based on the excited utterance exception to the hearsay rule. (*Id*., Ex. 12 at 8-9.) The State

objected and argued that the 911 recording would, at most, be impeachment evidence, though the

State noted as well that the witness had already been impeached. (*Id*., Ex. 12 at 9-10.) The trial

court denied the defense request to admit the recording as substantive evidence but ruled it could

be used to impeach Mr. Lessig. (*Id*., Ex. 12 at 12.)

During direct examination by defense counsel, Mr. Lessig testified that he had talked to

others in the neighborhood about the shooting and that what he heard during those conversations

was different from his own recollections and from what he had reported during the 911 call. (*Id*.,

Ex. 12 at 17-21.) Mr. Lessig acknowledged that this additional information caused him to change

his mind about some of the events he had earlier reported. (*See id*.) Defense counsel thereafter

moved to admit the 911 recording and the State objected. (*Id*., Ex. 12 at 21.) The trial court

sustained the State's objection, ruling that given Mr. Lessig's admissions during his testimony

with respect to the inaccuracies in what he told the 911 operator, there was no legal basis for

allowing the defense to play the tape. (*Id*., Ex. 12 at 27.) The court did, however, permit defense

counsel to examine Mr. Lessig in as much depth as he wanted. (*Id*.)

Defense counsel continued his examination of Mr. Lessig, and Mr. Lessig confirmed the

contents of his 911 call. (*Id*., Ex. 12 at 27-32.) Defense counsel thereafter re-offered the 911

recording as a past recollection recorded. (*Id*., Ex. 12 at 32.) The State objected and the trial

REPORT AND RECOMMENDATION

PAGE - 20

1    court again refused to admit the exhibit. (*Id.*) On cross-examination, Mr. Lessig again conceded

2    that many of the details he had provided to the 911 operator were wrong. (*See id.*, Ex. 12 at 34-

3    38.)

4        Given that defense counsel was permitted to thoroughly examine Mr. Lessig with respect

5    to the 911 call, and given that Mr. Lessig admitted to the inaccuracies in what he reported during

6    call, playing the 911 tape would have been merely cumulative. Petitioner fails to demonstrate

7    any violation of his confrontation rights arising out of the trial court's refusal to admit the tape of

8    Mr. Lessig's 911 call and, thus, Petitioner's federal habeas petition should be denied with respect

9    to his third ground for relief.

10                    *4.    Erroneous Admission of Evidence (Ground Four)*

11       Petitioner asserts in his fourth ground for relief that the trial court erred when it overruled

12   the defense objection to admission of State's exhibit 59-D. (Dkt. # 8 at 10; *see also* Dkt. # 3-1 at

13   12-13.) The exhibit in question was a photograph of Petitioner taken by Antonio Rios, a senior

14   inspector with the United States Marshals Service, following Petitioner's arrest in Long Beach,

15   California several days after the Belltown shooting. (Dkt. # 41, Ex. 10 at 20.) The photograph

16   showed Petitioner sitting on a curb, in handcuffs, being guarded by an armed United States

17   Marshal. (*See* Dkt. # 3-1 at 19.)

18       Defense counsel objected to admission of the photograph, arguing that it was irrelevant.

19   (Dkt. # 41, Ex. 10 at 3, 20.) The prosecutor argued that the photograph was relevant to the issue

20   of identification, which was an element of the crimes charged. (*Id.*, Ex. 10 at 4.) The prosecutor

21   noted that Petitioner looked different in the photograph than he did at the time of trial and

22   explained that the State needed the jury to see what Petitioner looked like closer in time to the

23   crime. (*Id.*) The trial court admitted the photograph over the defense objection, deeming it

REPORT AND RECOMMENDATION
PAGE - 21

1    relevant to the issue of identity. (*Id*., Ex. 10 at 4-5, 20.) Petitioner argues here that even if the

2    photograph was relevant, it was unfairly prejudicial and admission of the photograph violated his

3    rights under the Sixth and Fourteenth Amendments. (Dkt. # 3-1 at 12-13.)

4        "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497

5    U.S. 764 (1990). Questions related to the admissibility of evidence are typically matters of state

6    law for which federal habeas relief is unavailable. *Estelle*, 502 U.S. at 67-68. Only if the

7    admission of evidence rendered the trial fundamentally unfair in violation of due process is

8    federal habeas relief available. *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (citing

9    *Estelle*, 502 U.S. at 67-69).

10        When considering whether evidence alleged to have been erroneously admitted at trial

11    rendered the proceeding fundamentally unfair, the federal habeas court must determine whether

12    the error had a substantial and injurious effect or influence in determining the verdict. *Brecht v.

13    Abrahamson*, 507 U.S. 619, 638 (1993). In *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir.

14    2009), the Ninth Circuit observed that "even clearly erroneous admissions of evidence that

15    render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not

16    forbidden by 'clearly established Federal law,' as laid out by the Supreme Court." The Ninth

17    Circuit went on to explain in *Holley* that

18        The Supreme Court has made very few rulings regarding the admission of
         evidence as a violation of due process. Although the Court has been clear that a
19        writ should be issued when constitutional errors have rendered the trial
         fundamentally unfair, . . . it has not yet made a clear ruling that admission of
20        irrelevant or overtly prejudicial evidence constitutes a due process violation
         sufficient to warrant issuance of the writ.

21

22    *Id*. (citation omitted.)

23

REPORT AND RECOMMENDATION
PAGE - 22

Petitioner presented his challenge to the admission of the photograph in his second personal restraint petition, and the Washington Supreme Court rejected the claim. The Supreme Court commissioner explained his conclusion as follows:

> Mr. Sitthivong argues . . . that the trial court erred in admitting, over his objection, a State's exhibit consisting of a photograph of his arrest in California showing Mr. Sitthivong sitting on a curb with his hands cuffed behind him and a United States Marshall [sic] standing nearby with his taser drawn and pointed down. Mr. Sitthivong urges that the photograph was irrelevant and that even if it was relevant, its probative value was outweighed by the danger of undue prejudice. *See* ER 402, 403. But Mr. Sitthivong does not show, as he must, that the trial court abused its discretion in admitting the photograph. *State v. Arredondo*, 188 Wn.2d 244, 256, 394 P.3d 348 (2017). And even if the trial court erred in admitting the photograph, Mr. Sitthivong does not demonstrate that he was actually and substantially prejudiced by constitutional error or that admission of the photograph constituted a fundamental defect that inherently resulted in a complete miscarriage of justice. *Yates*, 177 Wn.2d at 17.

(Dkt. # 41, Ex. 53 at 4.)

Despite Petitioner's claim that the trial court's admission of the photograph violated his rights under the Sixth and Fourteenth Amendments, the claim, in fact, implicates only state law concerns. The photograph was arguably relevant to the issue of identity and properly admitted. Even if the trial court did err in admitting the photograph, Petitioner fails to demonstrate that admission of the photograph rendered his trial fundamentally unfair. Inspector Rios testified in detail about the arrest, all without objection, and he explained in his testimony that the arrest was effectuated by officers in tactical gear, pursuant to standard United States Marshal operating procedure, that the officers were armed, and that Petitioner was handcuffed following the arrest. (Dkt. # 41, Ex. 10 at 10-18.) Inspector Rios also testified that the picture was taken shortly after the arrest and that Petitioner was cooperative throughout the process. (*Id.*, Ex. 10 at 17-20.) It is difficult to discern how the photograph, when viewed in light of Inspector Rios' unchallenged testimony, could have resulted in any unfair prejudice to Petitioner.

REPORT AND RECOMMENDATION
PAGE - 23

Finally, even assuming the trial court's admission of the photograph could be deemed to have prejudiced Petitioner, Petitioner cites to no clearly established federal law which would have required the trial court to deny admission of the photograph. Petitioner's federal habeas petition should therefore be denied with respect to his fourth ground for relief.

### 5.    Prosecutorial Misconduct (Ground Six)

Petitioner asserts in his sixth ground for relief that the prosecutor committed misconduct when he knowingly presented false evidence to the trial court. (Dkt. # 8 at 14; *see also* Dkt. # 3-1 at 14-16.) In particular, Petitioner asserts that the prosecutor falsely claimed that a plea deal with State's witness Nam Nguyen had been withdrawn prior to Mr. Nguyen's testimony when, in fact, the deal had not been withdrawn. (*Id*.) Petitioner also asserts in his sixth ground for relief that the prosecution failed to disclose that Nam Nguyen had previously been convicted for making a false statement to a public servant. (*Id*. at 16.)

#### i.    Knowing Presentation of False Evidence

It is well established that a conviction obtained by the knowing use of false evidence is fundamentally unfair, and that such a conviction may not stand under the Fourteenth Amendment if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *Napue v. Illinois*, 360 U.S. 264, 269-71 (1950). *See also United States v. Agurs*, 427 U.S. 97, 103 (1976). The knowing use of false evidence violates due process regardless of whether the prosecutor solicits the false evidence or merely allows it to go uncorrected when it appears. *Napue*, 360 U.S. at 269. In order to succeed on a claim that the prosecutor used false evidence to convict him, a petitioner "must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material." *United States v. Zuno-Arce*, 339 F.3d 886,

REPORT AND RECOMMENDATION

PAGE - 24

1    889 (9th Cir. 2003) (citing *Napue*, 360 U.S. at 269-71). The test for materiality under *Napue* is

2    whether there is "any reasonable likelihood that the false testimony could have affected the

3    judgment of the jury." *Agurs*, 427 U.S. at 103.

4        Petitioner presented his challenge regarding the prosecutor's conduct in relation to Nam

5    Nguyen's testimony to the state courts in his second personal restraint petition, and the

6    Washington Supreme Court rejected the claim. The Supreme Court commissioner explained his

7    conclusion as follows:

8        Mr. Sitthivong claims reversible error in relation to the testimony of codefendant
         Nam Nguyen. Specifically, he asserts that the prosecutor lied when he told the
9        trial court that the State had retracted a plea deal with Mr. Nguyen that had
         included an agreement to testify in Mr. Sitthivong's trial. Mr. Sitthivong urges
10       that this lie precluded him from challenging Mr. Nguyen's credibility on the basis
         that the State's offer of leniency in the plea agreement gave him a motive to
11       testify falsely. But the State presents materials demonstrating that in fact the
         original plea agreement with Mr. Nguyen was withdrawn months before Mr.
12       Sitthivong's trial. The State and Mr. Nguyen subsequently entered into a new plea
         agreement that included additional charges, which did not include an agreement
13       of leniency in return for Mr. Nguyen's testimony. Mr. Nguyen was sentenced on
         that plea well before he testified. Mr. Sitthivong demonstrates no entitlement to
14       relief on this point.

15   (Dkt. # 41, Ex. 53 at 5-6.)

16       The record before this Court confirms that the commissioner's ruling was based on a

17   reasonable determination of the facts in light of the evidence presented during the state court

18   proceeding, and the ruling is therefore entitled to deference. The State presented extensive

19   documentation in conjunction with its response to Petitioner's second personal restraint petition

20   demonstrating that the plea Mr. Nguyen originally entered pursuant to the agreement to testify at

21   Petitioner's trial was indeed withdrawn and that Mr. Nguyen subsequently entered a plea that did

22   not include an agreement for leniency. (*Id*., Ex. 51 at 115-173.) Among the documents presented

23   by the State was a pre-sentence report filed by Mr. Nguyen's attorney in advance of his

REPORT AND RECOMMENDATION
PAGE - 25

1   sentencing in which counsel explained that "Although Mr. Nguyen no longer has an agreement

2   to offer him leniency in return for his testimony, he expects to testify in any event." (*Id.*, Ex. 51

3   at 173.)

4        Petitioner's contention that Mr. Nguyen's plea agreement was not withdrawn is

5   speculative at best and is, in fact, contrary to all evidence in the record before this Court. Given

6   the absence of any evidence demonstrating that the prosecutor's representations to the trial court

7   were false, Petitioner's prosecutorial misconduct claim necessarily fails. Petitioner's federal

8   habeas petition should therefore be denied with respect to the first part of his sixth ground for

9   relief.

10              ii.       Failure to Disclose Evidence

11       The Constitution requires that the prosecution disclose to an accused all evidence that is

12  "both favorable to the accused and 'material either to guilt or to punishment.'" *United States v.*

13  *Bagley*, 473 U.S. 667, 674 (1985) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The duty

14  to disclose encompasses both exculpatory evidence and impeachment evidence. *Strickler v.*

15  *Greene*, 527 U.S. 263, 280 (1999) (citing *Bagley*, 473 U.S. at 676). Evidence is material "if there

16  is a reasonable probability that, had the evidence been disclosed to the defense, the result of the

17  proceeding would have been different." *Kyles v. Whitely*, 514 U.S. 419, 433-34 (1995) (citing

18  *Bagley*, 473 U.S. at 682). A 'reasonable probability' is a probability sufficient to undermine

19  confidence in the outcome. *Id* at 434 (citing *Bagley*, 473 U.S. at 678).

20       Petitioner contends in the second part of his prosecutorial misconduct claim that the

21  prosecutor failed to disclose that Mr. Nguyen had previously been convicted for making a false

22  statement to a public servant. (Dkt. # 3-1 at 16.) However, this contention is directly refuted by

23  documentation Petitioner submitted in conjunction with his federal habeas petition and which he

REPORT AND RECOMMENDATION

PAGE - 26

also submitted to the state courts in support of his second personal restraint petition. (*See* Dkt. # 3-2 at 16; *see also* Dkt. # 41, Ex. 48 at 29.) Specifically, Petitioner has presented a copy of the prosecutor's case summary filed with the original information in Petitioner's case, and in the cases of his co-defendants Nam Nguyen and Jason Lee, which expressly stated that Mr. Nguyen had a prior conviction for making a false statement to a public servant. (*See id.*)

Because the record makes clear that Mr. Nguyen's conviction for making a false statement to a public servant was disclosed as a part of the charging document in Petitioner's case, Petitioner's contention that the information was improperly withheld necessarily fails. Petitioner's federal habeas petition should therefore be denied with respect to the second part of his sixth ground for relief.

### 6. Sufficiency of the Evidence (Ground Seven)

Petitioner asserts in his seventh, and final, ground for relief that there was insufficient evidence to support his convictions. (Dkt. # 8 at 15; *see also* Dkt. # 3-1 at 16.) In particular, Petitioner claims that he lawfully acted in self-defense and that the State failed to meet its burden of proving every element of the crime charged. (Dkt. # 3-1 at 17.)

The Due Process Clause of the Fourteenth Amendment requires that the prosecution prove beyond a reasonable doubt each element of the charged offense. *Carella v. California*, 491 U.S. 263, 265 (1989) (citing *In re: Winship*, 397 U.S. 358, 364 (1970)). Due process claims challenging the sufficiency of the evidence are evaluated under the standard announced in *Jackson v. Virginia*, 443 U.S. 307 (1979). The Supreme Court explained in *Jackson* that the relevant question in evaluating a claim of insufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.

REPORT AND RECOMMENDATION

PAGE - 27

It is the responsibility of the trier of fact, and not a reviewing court, to decide what conclusions should be drawn from the evidence admitted at trial. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). The Supreme Court has made clear that a reviewing court must be mindful of "the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296-97 (1992). In *West*, the Court emphasized the deference owed to the trier of fact:

> We said [in *Jackson*] that "*all of the evidence* is to be considered in the light most favorable to the prosecution" . . . that the prosecution need not affirmatively "rule out every hypothesis except that of guilt" . . . and that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

*Id.* at 296-97 (quoting *Jackson*, 443 U.S. at 326) (citations omitted, emphasis in original).

The Supreme Court has also made clear that sufficiency of the evidence claims are subject to a second layer of judicial deference on federal habeas review. Specifically, the Supreme Court has held that "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (citing *Cavazos*, 565 U.S. at 2).

Petitioner presented his sufficiency of the evidence claim to the state courts in his second personal restraint petition, and the Washington Supreme Court rejected the claim. The Supreme Court commissioner explained his conclusion as follows:

> [T]he evidence presented supports the statement of facts related above and therefore supports the convictions. Mr. Sitthivong appears to mainly argue that the State failed to disprove justifiable homicide. But in doing so he improperly views the evidence in the light most favorable to him, and he disputes the credibility of witnesses. In a challenge to the sufficiency of the evidence, the

REPORT AND RECOMMENDATION
PAGE - 28

1    evidence is viewed in the light most favorable to the State, and the reviewing
2    court does not invade the jury's exclusive province to determine the credibility of
     witnesses. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992); *State v.*
3    *Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

4    (Dkt. # 41, Ex. 53 at 6.)

5          Petitioner fails to demonstrate that this conclusion of the Supreme Court commissioner

6    was contrary to, or constituted an unreasonable application of, clearly established federal law. As

7    the Supreme Court commissioner observed, Petitioner's sufficiency of the evidence claim

8    appears to focus primarily on the issue of self-defense and Petitioner's belief that the State did

9    not present sufficient evidence to disprove justifiable homicide. Petitioner describes the State's

10   evidence as consisting of (1) drunk witnesses who did not observe the actual encounter between

11   Petitioner and the group of men he claims confronted him prior to the shooting, (2) a witness

12   who changed his story to appease the State's theory, (3) a witness who affirmed that Petitioner

13   had received death threats from the individuals who were the victims of his crime, and (4) a

14   witness who was "a convicted liar" and changed his story to obtain a deal. (*See* Dkt. # 3-1 at 16-

15   17.) Petitioner also maintains that Debra Green, who did not testify at trial, identified Landon

16   Nguyen as one of the shooters she saw which corroborates Petitioner's version of events. (*Id.* at

17   17.)

18         Petitioner's description of the State's "evidence" appears primarily directed at raising

19   questions regarding the credibility of the State's witnesses. Credibility determinations are the

20   sole province of the jury and are outside the scope of sufficiency review. To the extent Petitioner

21   relies on the statement of Debra Green, who purportedly identified another shooter, the statement

22   was not admitted at trial and, thus, is also outside the scope of sufficiency review. Finally, to the

23   extent Petitioner relies on testimony from a State's witness who purportedly affirmed that

REPORT AND RECOMMENDATION
PAGE - 29

Petitioner had received death threats from the individuals who were the victims of his crime, the record makes clear that Petitioner is viewing the evidence in the light most favorable to himself and not in the light most favorable to the prosecution as is required on sufficiency review.

This Court's review of the trial transcript confirms the Supreme Court commissioner's conclusion that there was sufficient evidence to support Petitioner's convictions. The primary evidence supporting Petitioner's theory of self-defense came from Petitioner's own testimony which was largely uncorroborated by the other witnesses. In particular, Petitioner testified that he had gotten into an argument earlier in the evening at a different bar in Belltown with a group of men that included Steve Sok and Landon Nguyen, two of the victims of the shooting, and that individuals in that group threatened to kill him during the argument. (Dkt. # 41, Ex. 12 at 49-50.) Petitioner further testified that when he later saw these same individuals at the V-Bar, he became fearful and armed himself with a gun that belonged to one of his companions. (*Id*., Ex. 12 at 59-63.)

While other individuals in Petitioner's group confirmed that Petitioner had been involved in an argument earlier in the evening at a different Belltown bar, none of them reported seeing any of the individuals who had been involved in that argument at the V-Bar later in the evening. In fact, the State presented testimony that Steve Sok, Landon Nguyen, and others in their group had spent most of the evening at a club in Pioneer Square and that the only bar they had been to in Belltown was the V-Bar much later that night. (*See id*., Ex. 5 at 134-39; Ex. 11 at 10-16, 43-46.) The State also presented testimony that no-one in the group that included Mr. Sok and Mr. Nguyen had been involved in any arguments during the evening. (*See id*.) This testimony suggests that Mr. Sok, Mr. Nguyen, and others in their group could not have been the individuals involved in the earlier argument with Petitioner.

REPORT AND RECOMMENDATION
PAGE - 30

1      Petitioner also testified that once his group arrived at the V-Bar, and he had armed

2 himself with a gun, he was approached by Mr. Sok and Mr. Nguyen and they started giving him

3 a hard time. (*Id*., Ex. 12 at 64-65.) According to Petitioner, after this initial interaction, Mr. Sok

4 and Mr. Nguyen turned and started walking away from him and back towards the V-Bar before

5 turning around again and pointing guns at Petitioner. (*Id*., Ex. 12 at 67-69.) Petitioner testified

6 that when he saw the guns, he started shooting. (*Id*., Ex. 12 at 72.) While other individuals in

7 Petitioner's group confirmed that Petitioner was involved in a confrontation with two other

8 individuals on the sidewalk near the V-Bar, none of the other witnesses who testified at trial saw

9 any guns except the one wielded by Petitioner.

10      The evidence presented at trial, when viewed in the light most favorable to the State,

11 demonstrated that Petitioner was the aggressor in his interactions with the victims at the V-Bar,

12 that Petitioner had not been involved in any argument with the victims earlier in the evening and

13 had no apparent reason to fear them, that Petitioner intentionally armed himself before

14 confronting the victims on the sidewalk near the V-Bar, that Petitioner started shooting after he

15 asked the victims a question and they confirmed that they knew an individual named Sonny

16 rather than in response to a perceived threat, and that when Petitioner's gun did not immediately

17 fire, he racked in another round and fired eight continuous rounds in the direction of the victims

18 as they fled towards the V-Bar and into a crowd of other people, killing Mr. Sok and injuring

19 Phillip Thomas. In sum, as the Supreme Court commissioner reasonably concluded, there was

20 sufficient evidence presented at trial to support Petitioner's convictions. Petitioner's federal

21 habeas petitioner should therefore be denied with respect to his seventh ground for relief.

22

23

REPORT AND RECOMMENDATION
PAGE - 31

### C.    Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that Petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his petition.

## VI.    CONCLUSION

Based on the foregoing, this Court recommends that Petitioner's amended petition for writ of habeas corpus (dkt. # 8) be denied and that this action be dismissed with prejudice. This Court also recommends that a certificate of appealability be denied with respect to all claims asserted in this federal habeas action. A proposed order accompanies this Report and Recommendation.

//

//

//

//

//

//

//

REPORT AND RECOMMENDATION
PAGE - 32

## VII.    OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 18, 2020**.

DATED this 25th day of November, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 33